IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL U. PETERSON,** | : | |
| Petitioner | : | CIVIL NO. 1:CV-06-01210 |
| v. | : | **(Judge Rambo)** |
| **SUPT. ROBERT SHANNON, *et al.*,** | : | |
| Respondents | : | |

## **M E M O R A N D U M**

Before the court is Petitioner Michael U. Peterson's ("Peterson") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the revocation of his parole. (Doc. 1.) Peterson asserts that the Pennsylvania Board of Probation and Parole ("Board") relied upon a misconduct decision supported by insufficient evidence to revoke parole. For the reasons that follow, the petition will be denied.

**I.     Background**

On July 17, 1996, the Court of Common Pleas of Allegheny County, Pennsylvania sentenced Peterson to a term of imprisonment of five to ten years for criminal homicide. (Doc. 11 at 4.) Peterson was released on parole on September 27, 2000, but later violated the conditions of his parole. (*Id*.) As a result, the Board recommitted him as a technical parole violator on July 9, 2001. (*Id*.)

On January 31, 2003, the Court of Common Pleas of Westmoreland County, Pennsylvania sentenced Peterson to an aggregated term of imprisonment of four to eight years for seven counts of manufacture, sale or delivery, or possession of a controlled substance with intent to deliver, *see* 35 P.S. § 780-113(a)(1). (*Id*. at 11.) Six months later Peterson was recommitted as a convicted parole violator. (*Id*. at 9.)

On February 17, 2005, Peterson was constructively paroled from his criminal homicide sentence, but remained incarcerated pursuant to a state detainer for his drug convictions. (*Id*. at 16.) One of the conditions of Peterson's parole was that he was to "abide by the rules and regulations of the institution." (*Id*. at 18.)

At the time of his constructive parole, Peterson was incarcerated at the State Correctional Institution in Greensburg, Pennsylvania ("SCI-Greensburg"). On April 11, 2005, a SCI-Greensburg corrections officer ordered two officers to search cell A-11, which was occupied by inmate Donald Bound. (*Id*.) During the search, the officers found "approximately 2.7 grams of white and yellow tablets of suspected steroids." (*Id*.) Inmate Bound admitted that the tablets were steroids, and upon investigation four confidential informants testified that the steroids were purchased from Peterson. (*Id*.) On May 10, 2005, Peterson was issued a misconduct report for his involvement in the distribution of steroids. (*Id*.)

A hearing examiner conducted a prison disciplinary hearing on May 17, 2005. (*See id.* at 21–22.) Peterson was found guilty of possessing contraband and received sixty days of disciplinary custody. (*Id.*) Further, in a decision dated September 1, 2005, the Board concluded that Peterson had violated a condition of his parole (failure to abide by the rules and regulations of the institution), recommitted Peterson as a technical parole violator, and ordered him to serve nine months of back time. (*Id.* at 42.) In its decision the Board relied upon Peterson's admission, a parole agent's testimony, and the misconduct report. (*Id.*) Peterson was also advised of his right to appeal the decision. (*Id.*)

Peterson did not file a petition for administrative review with the Board or appeal the Board's decision to the Commonwealth Court. Rather, on May 17, 2005, he appealed the hearing examiner's decision to SCI-Greensburg's program review committee, arguing, *inter alia*, that the hearing procedures were improper and the evidence was insufficient to support the decision. (*Id.* at 43.) The program review committee sustained the guilty decision, (*id.* at 44), and Peterson appealed to SCI-Greensburg's superintendent, D.J. Wakefield, (*id.* at 46). Superintendent Wakefield also sustained the guilty decision, finding no evidence of improper hearing procedures. (*Id.*) Peterson appealed Superintendent Wakefield's decision to the chief

hearing examiner. (*Id*. at 47–48.) The chief hearing examiner upheld the guilty decision in a response dated June 20, 2005, finding that proper procedures were followed at Peterson's misconduct hearing. (*Id*. at 49.) The chief hearing examiner also found the evidence presented, such as the testimony from the four confidential informants, sufficient to support the decision. (*Id*.)

Following the chief hearing examiner's denial of his appeal, Peterson filed a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983 in this court. *See Peterson v. Lt. Bussard, et al.*, No. 1:05-cv-02416 (M.D. Pa. Nov. 21, 2005). In that complaint, Peterson claimed that the defendants, Pennsylvania Department of Corrections ("DOC") officials, violated his Fourteenth Amendment due process rights when he was placed in disciplinary custody without proper notice and without an opportunity to be heard. He further alleged that, as a result of the defective misconduct hearing, the Board sanctioned him with revocation of his constructive parole and imposition of nine months of back time. The defendants in that case filed a motion to dismiss, which the court granted on October 23, 2006. (*Id*. at Doc. 14.) The court found that, while Peterson had identified a liberty interest since his sanction included parole revocation and nine months back time, the record reflected that he was afforded the full requirements of due process in his disciplinary hearing. The

court further found that there was sufficient evidence to support the outcome of the hearing. As a result, the court granted the motion to dismiss.

Prior to the court's disposition of the motion to dismiss Peterson's § 1983 complaint, Peterson filed the instant petition for writ of habeas corpus. (Doc. 1.) His petition, while somewhat unclear, appears to challenge both the outcome of his disciplinary hearing and the Board's decision to revoke his constructive parole and impose back time. In their response to the petition, Respondents address both challenges.

## II.   Discussion

Respondents contend that the instant petition must be dismissed for failure to exhaust state court remedies. In the alternative, they argue that Peterson's claim is without merit.

### A.   Exhaustion

As a general rule, a state prisoner must exhaust available state court remedies before seeking habeas relief in federal court. 28 U.S.C. § 2254(b)(1)(A); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993). The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts. *O'Sullivan v. Boerckel*, 526

5

U.S. 838, 845 (1999); *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). All claims must have been presented to each level of the state courts. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). Further, the petitioner bears the burden of establishing that all available state remedies have been exhausted. *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005).

In the case of a parole violator, such as Peterson, he must first challenge the Board's decision by filing an administrative appeal. *See* 37 Pa. Code § 73.1(b)(1).[1] The administrative appeal must be followed by an appeal to the Pennsylvania Commonwealth Court. *See* 42 Pa. Cons. Stat. Ann. § 763(a) (granting the Commonwealth Court exclusive jurisdiction over appeals from final orders of government agencies); *Borsello v. Colleran*, 833 A.2d 1213, 1215 (Pa. Commw. Ct. 2003) ("Appeals of the Board's parole revocation and recommitment orders are within the exclusive appellate jurisdiction of the Commonwealth Court."). The third and final step a petitioner must pursue is a petition to the Pennsylvania Supreme Court for allowance of appeal. *See Burkett v. Love*, 89 F.3d 135, 138 (3d Cir. 1996).

Nonetheless, a district court has the authority to address the merits of a habeas

---

[1] Title 37 Pa. Code § 73.1(b)(1) provides in part that "[p]etitions for administrative review shall be received at the Board's Central Office within 30 days of the mailing date of the Board's determination."

petition despite the petitioner's failure to exhaust state remedies where it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Lambert v. Blackwell*, 134 F.3d 506, 514 (3d Cir. 1997) (citing *Granberry v. Greer*, 481 U.S. 129, 134–35 (1987)).  The Supreme Court in *Granberry* directed the court of appeals to "determine whether the interests of comity and federalism [would] be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Granberry*, 481 U.S. at 134.  Thus, where a habeas petitioner fails to exhaust a meritless claim, the interests of justice are served if the district court denies the petition.  *Id*. at 135; *see also Long v. Wilson*, 393 F.3d 390, 403 (2004) ("[T]he Supreme Court held that a court has the discretion, in the interests of comity and federalism, to decide whether justice would be better served by insisting that a claim be fully exhausted or by rejecting it if it is plainly lacking in merit.").

In the instant case, Peterson brought this federal habeas proceeding without petitioning the Board for administrative review or appealing the Board's decision to the Pennsylvania Commonwealth Court.  Thus, at the time this proceeding was commenced, state court remedies had not been exhausted.  In their answer to the habeas petition, Respondents raise Peterson's failure to exhaust, but alternatively

address the merits of Peterson's petition.  Because the court concludes that the instant petition is without merit, it need not determine whether to excuse Peterson's failure to exhaust.

## B. Peterson's Due Process Claims

Peterson claims that his due process rights were violated when the Board accepted the outcome of the disciplinary hearing as the basis for his parole revocation.[2]  Underlying this claim is Peterson's contention that there was insufficient evidence to establish a violation of the conditions of his parole.

Due process in the context of a parole revocation is different than due process in the context of a criminal prosecution.  The distinguishing factor is that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  Further,

---

[2] As previously stated, Peterson is unclear as to whether he is challenging the Board's decision or simply the outcome of the disciplinary hearing.  Even though Peterson expressly states in his reply, "Petitioner is not challenging the Parole Board's actions," (Doc. 12 at 2), his argument clearly addresses the decision of the Board, (*see id.* at 4).  Further, he states at the conclusion of his reply, "[I]n order to challenge the parole revocation, he must first challenge the procedure employed concerning the misconduct decision and the recalculation of his sentence." (*Id*. at 5.)  Construing the petition and the reply liberally, and in the interest of justice to this *pro se* litigant, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the court will address both the Board's decision and the underlying misconduct.

8

parole revocation is an administrative procedure which occurs after a criminal prosecution is complete. Thus, the "full panoply of rights" due a defendant during criminal proceedings does not apply to parole revocations. *Id*. While not entitled to the "full panoply of rights," a parolee is entitled to certain procedural protections, such as notice of the violations, disclosure of the evidence against him, an opportunity to be heard and to present witnesses and evidence, the right to confront and cross-examine witnesses, a "neutral and detached" hearing, and a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. *Id*. at 481–89. The Due Process Clause, however, is not offended when parole violations are found "by a judge under a preponderance of the evidence standard, [and] not by a jury beyond a reasonable doubt." *United States v. Dees*, 467 F.3d 847, 855 (3d Cir. 2006). Parolees in revocation proceedings also face a greater range of evidence that may be admissible against them and have no right to a jury or to a right against self-incrimination. *United States v. Loy*, 237 F.3d 251, 260 (3d Cir. 2001); *accord Lee v. Pennsylvania Bd. of Prob. & Parole*, 885 A.2d 634, 639 (Pa. Commw. Ct. 2005) ("Generally, the rules of evidence are not strictly applied in proceedings before the Board.").

In the instant case, Peterson claims that the Board erroneously revoked his parole based on the findings from the disciplinary hearing. Specifically, he contests the sufficiency of the evidence relied upon in finding him guilty of the misconduct. The court will address first whether Peterson's due process rights at issue were violated in the context of the disciplinary proceeding before addressing whether the Board relied upon an erroneous misconduct decision.

When a prison disciplinary hearing may result in the loss of liberty by way of the revocation of parole, due process requires that the prisoner receive: 1) written notice of the claimed violation at least twenty-four hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).

Initially, Peterson claims that he was not put on notice of the charges against him in a timely and proper manner. Specifically, he contends that Respondents were required to inform him of the results of laboratory testing on the steroids tablets prior to the disciplinary hearing. The record reflects that Peterson received a copy of the

incident report on May 10, 2005, the day it was issued, at 12:35 p.m. (Doc. 11 at 19.) Thereafter, a hearing was held on May 17, 2005, at 9:00 a.m. (*Id*. at 21–22.) Peterson appeared at the hearing and received written notice of the charges nearly seven days prior to the hearing—well before the twenty-four hour deadline. The court is unaware of any support for an additional requirement that Peterson be informed of results of laboratory testing on the steroids tablets. Therefore, Peterson's claim here fails.

Peterson also contests the sufficiency of the evidence relied upon in finding him guilty of the misconduct. The findings of the hearing examiner are required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *Id*. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the tribunal's conclusion. *See id*.

After review of the record, the court concludes that there was more than ample evidence to support the hearing examiner's decision. The hearing examiner

11

considered the discovery of white and yellow tablets found in Bound's cell.  After questioning, Bound admitted that the items found were steroids, but he refused to identify the source of the contraband.  Nevertheless, the hearing examiner also considered the testimony of four confidential informants who all confirmed that the contraband was purchased from Peterson.  This evidence sufficiently supports the outcome of the hearing.  Thus, the petition will be denied with respect to Peterson's claim that there was insufficient evidence to support the hearing examiner's decision.

### C.     Board's Decision

As stated above, Peterson contends that the Board violated his right to due process when it relied upon the misconduct decision in order to revoke parole.  Based on the court's disposition of Peterson's claim that the misconduct decision was based on insufficient evidence, the court finds that Peterson has failed to present a credible case for denial of due process in connection with the revocation of his parole.

**III.    Conclusion**

For the reasons set forth above, the court will deny Peterson's petition for writ of habeas corpus.

An appropriate order follows.

                                           s/Sylvia H. Rambo  
                                           SYLVIA H. RAMBO  
                                           United States District Judge

Dated: December 12, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MICHAEL U. PETERSON,**          :
                                  :
    **Petitioner**              :   **CIVIL NO. 1:CV-06-01210**
                                  :
**v.**                            :   **(Judge Rambo)**
                                  :
**SUPT. ROBERT SHANNON, et al.,** :
                                  :
    **Respondents**             :

## O R D E R

**AND NOW**, this 12th day of December, 2008, in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) There is no basis for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c).

                                                 s/Sylvia H. Rambo
                                                 SYLVIA H. RAMBO
                                                 United States District Judge